IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

LEE ANN DOSS, et al.                                                                                          PLAINTIFFS

v.                                        Case No. 4:14-cv-04007

AMERICAN FAMILY
HOME INSURANCE COMPANY                                                                       DEFENDANTS

**ORDER**

Currently before the Court is Plaintiffs' Motion to Remand. (ECF No. 24). Defendant American Family Home Insurance Company has responded. (ECF No. 36). Plaintiffs filed a reply to Defendant's response. (ECF No. 43). The Court finds this matter ripe for consideration. Plaintiff argues that this Court does not have jurisdiction over this lawsuit because Defendant has not shown that the amount in controversy exceeds the $5 million minimum for federal court jurisdiction under the Class Action Fairness Act. For reasons reflected herein, Plaintiff's Motion to Remand (ECF No. 24) is DENIED.

I.  Background

Plaintiffs filed an amended putative class action complaint in state court in Miller County, Arkansas on December 3, 2013. (ECF No. 5). On January 6, 2014, Defendant removed the case to this Court. (ECF No. 1). Defendant filed a Motion for Judgment on the Pleadings on February 17, 2014. (ECF No. 20). On March 18, 2014, Plaintiff filed a Motion to Remand. The Court will resolve the pending Motion to Remand first because it concerns a question of federal jurisdiction, a threshold matter. *See Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 998 (2003).

The named Plaintiffs, Lee Ann Doss and B.G. Peavy ("Doss and Peavy"), were under a homeowner's insurance policy issued by the Defendants American Family Home Insurance

Company ("American Family"). (ECF No. 1). Doss and Peavy suffered a covered loss to their insured property on August 13, 2008. On October 17, 2008, American Family estimated the cost to repair the property at $5,330.95, a total that included the cost of labor and materials. American Family paid Doss and Peavy the "actual cash value" of their loss, which was $4,620.77 after subtracting depreciation and the amount of the deductible. The depreciated amount included both the cost of labor and materials. Doss and Peavy, in their Complaint, argue that Arkansas law prohibits an insurance company from depreciating the cost of labor. Therefore, by depreciating this cost, Plaintiffs claim that American Family (1) breached their contract with Plaintiffs and (2) were unjustly enriched.

American Family has removed this case to federal court, asserting that jurisdiction is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). For a federal court to have jurisdiction under CAFA, the removing party must demonstrate that there is (1) a proposed plaintiff class of 100 or more members, (2) minimal diversity, and (3) more than $5 million in controversy, exclusive of interest and costs. 28 U.S.C. § 1332(d). The parties only dispute is whether the aggregate amount in controversy exceeds $5 million.

## II. Discussion

"[A] party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence regardless of whether the complaint alleges an amount below the jurisdictional minimum." *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009). "Under the preponderance standard, '[t]he jurisdictional fact ... is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are . . . .'" *Id.* at 959 (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)) (alteration in original). If a defendant

meets its burden, then a plaintiff seeking remand must establish to a legal certainty that the amount in controversy is less than the statute requires. *Bell*, 557 F.3d at 956. The legal-certainty standard is not met if even a possibility exists of recovering more than the statutory minimum. *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011).

A. Compensatory Damages

To support their claim that the amount in controversy exceeded the jurisdictional minimum, American Family submitted the affidavit of Denise Rice, Claims Data Specialist for American Family. (ECF No. 1, Ex. 3). She gathered information from American Family's records to identify the "approximate number of insureds of American Family who received payment for loss or damage under a policy providing insurance coverage for a dwelling or other structure located in the State of Arkansas [from May 2004 to December 3, 2013]." (ECF No. 1, Ex. 3 ¶ 6-7). The records indicated that American Family paid out approximately $27,000,000 in indemnity payments on 8,838 claims for property damage during that time.

The Complaint asserts damages only for the allegedly unlawful depreciation of labor costs. Because American Family's Adjuster Summary does not separately itemize material and labor for every item of work, it is difficult to reach an exact amount of damages. Thus, American Family has utilized four different methods of calculating approximate compensatory damage amounts to aid in determining the amount in controversy for CAFA jurisdiction.

The first two calculations were based on sales tax. Because sales tax in Arkansas is not added to labor costs, but only to material costs, the first estimation was reached by multiplying the total sales tax on Doss and Peavy's Adjuster Summary by the tax rate in Arkansas. This calculation yielded the approximate amount of the total actual value allocated to materials. That number was

used to determine the percentage of the total allocated to both labor and materials. American Family applied those percentages to the total depreciation to estimate the amount of depreciation for labor costs on Doss and Peavy's claim. When applying the same percentages to the total of indemnity payments paid out by American Family, $27,000,000, the first estimated depreciation deduction for labor charges for the class was approximately $1,566,000. Using the same percentages, and assuming that Doss and Peavy's claims were typical of the class, American Family also estimated the damages for the class by multiplying Doss and Peavy's estimated labor depreciation deductions by the total amount of claims in Arkansas for the relevant time period, 8,838, yielding an estimated $2,668,369 total compensatory damages.

The next two calculations were based on the percentage of payment allocated to labor on the specific projects where labor and materials were separately itemized in the Adjuster's Summary. American Family, using the project with the lowest percentage attributable to labor, multiplied the percentage attributed to labor by the total replacement cost to reach a total amount of payment allocated to labor. American Family then applied the percentage to the depreciation deductions to determine the approximate amount of depreciation deduction attributed to labor. By multiplying this percentage by the total amount of money paid out on claims in Arkansas, the estimation was $759,780 in compensatory damages for the class. Also using these percentages, and assuming Doss and Peavy's claims are typical of the class, the estimated depreciation for labor on their Adjuster's Summary was multiplied by the total number of claims in Arkansas, yielding an estimated $1,288,051 in compensatory damages for the class.

Doss and Peavy argue that the sample is flawed because it includes data for some persons who are not class members. Specifically, they argue that the data American Family used to calculate

the amount in controversy includes some claims where the cost of labor was depreciated and some where it was not. They also argue that, by using only Doss and Peavy's data to calculate an estimation of damages, American Family is using a statistically insignificant sample size.

The Court finds Plaintiffs' arguments unavailing. Plaintiffs seek to recover damages on behalf of an alleged class of policyholders who "received 'actual cash value' payments, directly or indirectly, from American Family Home for loss or damage to a dwelling or other structure located in the State of Arkansas, . . . within the ten years preceding the date of filing of this Class Action Complaint, where the cost of labor was depreciated." (ECF No. 5, ¶ 6). Doss and Peavy allege that their claims "are typical of the claims of all Class Members, as they are all similarly affected . . ." and that class members' "claims arise from the same underlying facts . . ." (ECF No. 5 ¶ 25). They also allege it was "Defendant's custom and practice" to depreciate labor at "all times relevant hereto," (ECF No. 5 ¶¶ 13-14) and that all class members have been "similarly affected by Defendant's custom and practice of unlawful and unjust conduct," (ECF No. 5 ¶ 25).

Using the named Plaintiffs as "typical" class members and multiplying their claims by the number of persons estimated in a class is precisely how courts generally determine the estimated amount in controversy. Otherwise, the amount of evidence required to answer this preliminary pleading question could be astronomical and would in fact be a demand for proof, when at this stage, demonstrating the amount in controversy is a pleading requirement. *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 944-45 (8th Cir. 2012). Because this number is an estimate, it is understood by the Court that some individual claims of class members may have a depreciation for labor and some may not. It is also understood that each claim may also contain a different amount of depreciation, some with more and some with less damage than Doss and Peavy. Without wading through the almost

5

9,000 claims, these proposed calculations are the best way to get an accurate approximation of the amount in controversy. Even if ultimately this estimate proves to be overly inclusive, the Defendant has appropriately estimated the damages at this stage in the proceedings. *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 886-87 (8th Cir. 2013).

The Court finds that a reasonable fact finder could conclude that any of these four methods of calculations is a fair and accurate estimation of the damages, and that Defendant's approximation satisfies their evidentiary burden now at the pleading stage. Because the Court finds a fact finder could legally conclude that the Plaintiff class has compensatory damages of as much as $2,668,396, for CAFA purposes, we will assume an estimated $2,668,369 in total compensatory damages for the named class.

### B. Statutory Damages

The Complaint also asks for statutory penalties of 12% of the depreciated labor costs recovered. Arkansas law provides for a 12% penalty to insurers in cases where an insured brings suit and recovers "twenty percent (20%) of the amount demanded or which is sought in the suit." Ark. Code Ann. § 23-79-208(d). Assuming that the Plaintiff class is able to recover at least 20% of the damages they seek in this action, they will be entitled to recover a 12% penalty against Defendants. Accordingly, if the Plaintiff class recovers the total amount of their compensatory damages estimate, $2,668,396, the 12% penalty would amount to $320,207.52.

### C. Punitive Damages

The parties dispute the availability of punitive damages. Doss and Peavy argue that their Complaint does not allege facts that would support the recovery of punitive damages under Arkansas law. American Family responds that the allegations in the Complaint are sufficient that a jury could

legally conclude that punitive damages are available.

Federal courts applying Arkansas law have held that punitive damages are "assumed to be legally recoverable even [where a] plaintiff's complaint [does] not include a prayer for punitive damages or allege that the defendant acted wantonly or maliciously." *Knowles v. Std. Fire Ins. Co.*, 4:11-CV-04044, 2013 WL 3968490, at *10 (W.D. Ark. Aug. 2, 2013); *see also Bowles v. Osmose Utilities Servs., Inc.*, 443 F.3d 671, 675 (8th Cir. 2006); *Thatcher v. Hanover Ins. Grp., Inc.*, 4:10–CV–4172, 2012 WL 1933079, at *6 (W.D. Ark. May 29, 2012) ("[T]here have been cases in which punitive damages have been properly awarded when merited even in the absence of their being sought after or prayed for by a party."). The fact that fraud was not pled in a separate count and that there is no prayer for punitive damages does not preclude the Plaintiffs from eventually recovering punitive damages. *See Basham*, 979 F. Supp. 2d at 889.

Thus, the relevant question here is whether the allegations in the Complaint constitute the type of conduct that could potentially support an award of punitive damages. As a court sitting in diversity, the court looks to Arkansas law when determining whether punitive damages are available. Punitive damages are not ordinarily recoverable for breach of contract under Arkansas law. *McClellan v. Brown*, 632 S.W.2d 406, 407 (Ark. 1982). In adhering to that principle, the Arkansas courts have stated: "To support a claim for punitive damages there would have to be a willful or malicious act in connection with a contract. A bare allegation of fraud which results in a monetary loss would not justify punitive damages . . ." *Id*. Doss and Peavy allege that American Family "failed to disclose" information, "acted in a manner designed to conceal" information, and that these actions amounted to "fraudulent concealment." (ECF No. 5). These allegations could be construed as stating a claim for either bad faith in the insurance context or common law fraud, and at this stage,

7

they create at least the possibility that punitive damages could be awarded in tort. *See Knowles*, 4:11-CV-04044, 2013 WL 3968490 (noting Plaintiff made similar allegations and finding that defendant had established by a preponderance of the evidence that punitive damages were possible); *see also Columbia Nat'l Ins. Co. v. Freeman*, 64 S.W.3d 720, 723 (Ark. 2002) (punitive damages for bad faith potentially available when insurer "affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured"); *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 785 (8th Cir. 2010) (punitive damages for fraud possible if defendant knew or ought to have known that his conduct would result in injury or damage, justifying an inference of malice). Doss and Peavy have failed to show to a legal certainty that American Family has not alleged fraud in Arkansas.

The question therefore is how much the plaintiff class may potentially recover in punitive damages. Courts have found punitive damage multipliers of up to six to be acceptable when considering the availability of punitive damages in the CAFA amount-in-controversy context. *See Basham v. Am. Nat. Cnty. Mut. Ins. Co.*, 979 F. Supp. 2d 883, 890 (W.D. Ark. 2013) (collecting cases). Because the Court finds American Family has adequately proven that a fact-finder might legally conclude that the compensatory damage award would be $2,668,369, punitive damages awarded on that amount with a multiplier of less than 0.5%, when combined with statutory damages and attorney's fees,[1] would support CAFA jurisdiction. *See Kerr v. Ace Cash Experts, Inc.*, 4:10 CV 1645 DDN, 2010 WL 5177977, at *2 (E.D. Mo. Dec. 14, 2010) (holding that a compensatory damages award of only $594,000 could "satisfy the amount in controversy requirement because of the potential for punitive damages and attorneys fees"). For the purposes of the amount in

---

[1] Discussed *infra*, see II.D for discussion of attorneys fees.

controversy calculations, the Court notes that a potential punitive-to-compensatory damages ratio of 1:1 is "well within the acceptable range." *Moore v. Am. Family Mut. Ins. Co.*, 576 F.3d 781, 791 (8th Cir. 2009).

Defendant has established by a preponderance of the evidence that a punitive damages award is legally possible in this case and should be included when calculating the amount in controversy. Plaintiff has failed to meet his burden of proving to a legal certainty that an award of punitive damages could not occur. The Court finds that American Family has met its burden to show that a fact finder could conclude that Plaintiffs are entitled to punitive damages within the "acceptable range" of a 1:1 ratio. *See Back Doctors Ltd. v. Metropolitan Property & Casualty Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011) (noting that the legal-certainty standard is not met if even a possibility exists of recovering more than the statutory minimum). Accordingly, the Court will assume a punitive damages award of $2,668,369.

### D.  Attorneys Fees

Doss and Peavy argue that attorneys fees should not be included in the amount in controversy because they have not yet been incurred and when the amount in controversy is speculative. American Family argues that this Court's precedent supports both an award of fees not incurred and an award of up to 40%.[2]

When determining whether a party seeking removal has satisfied the amount in controversy burden, "only statutory attorney fees count toward the jurisdictional minimum calculation." *Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005) (emphasis

---

[2]The calculation of compensatory damages, stautory damages, and punitive damages analyzed have exceeded the $5 million minimum for amount in controversy. The discussion herein causes the amount to well exceed the minimum required for jurisdiction.

added)*; Knowles*, 4:11–CV–04044, 2013 WL 3968490, at *10 (holding that attorney's fees not yet incurred at the time of removal may still be included in calculating the amount in controversy); *see also Crawford v. F. Hoffman–La Roche Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001) ("Statutory attorney fees do count toward the jurisdictional minimum for diversity jurisdiction."). Under Arkansas law, an insurance policy holder may be entitled to collect "reasonable attorney's fees" expended in prosecuting an action where an insurance company has failed to pay what is owed pursuant to the insurance policy. Ark. Code Ann. § 23-79-208(a)(1) ("In all cases in which the loss occurs ... the [company] shall be liable to pay the holder of the policy or his or her assigns, in addition to the amount of the loss, . . . all reasonable attorney's fees for the prosecution and collection of the loss."). Therefore, reasonable attorneys fees are awarded by statute in Arkansas and may be added when determining whether the amount in controversy is sufficient for federal jurisdiction under CAFA in this case.

Under Arkansas law, an award of fees is determined by taking into account the factors described in *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 229 (1990), including the experience and ability of the attorney; the time and labor required to perform the legal service properly; the amount involved in the case and the results obtained; the novelty and difficulty of the issues involved; the fee customarily charged in the locality for similar legal services; whether the fee is fixed or contingent; the time limitations imposed upon the client or by the circumstances; and the likelihood, if apparent to the client, that accepting the case precluded the attorney from accepting other employment. For purposes of calculating a reasonable estimate of fees to be awarded at the conclusion of a case, a fact-intensive, prospective analysis of the *Chrisco* factors is neither necessary nor appropriate early in the litigation. *Raskas*, 2013 WL 3198177 at *3.

Thus, we look to other similar cases. A 40% rate of attorneys fees has been approved by the Court and others. *Knowles*, 2013 WL 3968490, at *9; *Basham*, 979 F. Supp. 2d at 890. The defendant is obligated to provide proof showing that a fact finder "might legally conclude" that the fees it proposes are possible. Because American Family has adequately demonstrated that similar fees have been used for calculating attorney's fees in similar cases, the Court finds that American Family has shown it is reasonable to use a 40% multiplier to estimate attorneys fees for the amount in controversy. Attorneys fees may be estimated, therefore, at $1,067,358.40.[3]

### III.  Conclusion

Accordingly, the Court concludes that American Family has proven that a fact finder might legally conclude that the amount in controversy exceeds $5 million. Therefore, Plaintiff's Motion to Remand is DENIED.

**IT IS SO ORDERED**, this 19th day of September, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[3] The Court notes that, alternatively, because the Complaint has alleged that American Family committed actions which could give rise to punitive damages, and courts have used multipliers of 4-6 when calculating punitive damages, that a calculation of attorneys fees would be unnecessary for American Family to support their burden of demonstrating that the amount in controversy exceeds $5 million.